IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH NICOLE MARSHALL, | : Civil No. 1:25-CV-480 |
| | : |
| Plaintiff, | : |
| | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, | : |
| Commissioner of Social Security, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

## I.  Introduction

Elizabeth Marshall filed an application under Title II of the Social Security Act for disability and disability insurance benefits on May 12, 2022.[1]  Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Marshall was not disabled from her alleged onset date of February 10, 2022, through May 16, 2024, the date of the ALJ's decision.[2]

Marshall now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.  After a review of the record,

---

[1] Tr. 22.
[2] Tr. 22-33.

and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[3] we conclude that substantial evidence supports the ALJ's findings in this case.  Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    Statement of Facts and of the Case

Marshall filed for disability and disability insurance benefits, alleging disability due to chronic lower back  and neck pain, degenerative disc disease, scoliosis, arthritis, lumbar radiculopathy, numbness and tingling of the upper and lower extremities, Type 2 diabetes, gastroesophageal reflux disease ("GERD"), post-traumatic stress disorder ("PTSD"), and sleep apnea.[4]  Marshall was 49 years old at the time of her alleged onset of disability, had at least a high school education, and had past relevant work as a sales attendant, merchandise displayer, and bill collector.[5]

---

[3] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[4] Tr. 246.
[5] Tr. 31-32.

The medical record regarding Marshall's impairments[6] revealed that in March of 2021, Marshall presented at WellSpan Orthopedics with Dr. Craig Sullivan for an urgent care follow-up visit after a fall on stairs.[7] She reported left shoulder and right middle finger pain, as well as occasional tingling in her arm.[8]  X-rays revealed no acute findings,[9] but she claimed the pain hindered her ability to dress and lay on her side.[10] Dr. Sullivan noted signs of rotator cuff disease and ordered an MRI,[11] which showed a high-grade complex tear of the supraspinatus tendon, mild partial-thickness tearing of the infraspinatus tendon, underlying rotator cuff tendinosis, mild tendinosis of the biceps long head intra-articular segment, degeneration and attrition of the glenoid labrum, and mild acromioclavicular joint osteoarthrosis.[12]   Dr. Sullivan advised Marshall to obtain a second opinion for treatment and referred her to Dr.

---

[6] Because Marshall's appeal focuses on the ALJ's treatment of evidence related to her physical impairments, we will forego discussion and analysis of Marshall's mental health records and evaluations.

[7] Tr. 947.

[8] *Id.*

[9] Tr. 922.

[10] Tr. 947.

[11] Tr. 949.

[12] Tr. 937.

John Deitch,[13] who recommended Marshall undergo a arthroscopic procedure for a rotator cuff repair with possible debridement.[14] This procedure occurred on February 16, 2022.[15]

In April of 2022, Marshall presented to Dr. Deborah Bernal for complaints of widespread body pain.[16] Marshall described her pain as "aching, sharp shooting, throbbing with constant cramps and spasms with associated weakness, paresthesia, sensitivity to touch, and sleep disturbances."[17] Dr. Bernal diagnosed her with chronic bilateral low back pain without sciatica, cervicalgia, vitamin D deficiency, numbness and tingling, and noted a scoliosis concern.[18] Dr. Bernal recommended a four month medical marijuana trial for pain management and ordered a scoliosis X-ray, which revealed a left curvature in her spine.[19]

---

[13] Tr. 939.
[14] Tr. 931.
[15] Tr. 346.
[16] Tr. 731.
[17] *Id.*
[18] Tr. 728.
[19] Tr. 725-28.

4

A week later, Marshall appeared for a post-operative visit with Dr. Deitch complaining of shoulder pain after breaking up a dog fight.[20]  A physical examination revealed painful active motion, but an ability to do active scapular plane abduction with a negative drop arm sign.[21]  Dr. Deitch also noted no significant swelling and good strength with resisted external rotation without lag.[22]  In May of 2021, Marshall continued to report shoulder pain associated with intermittent redness, tingling, and painful popping.[23]  An MRI revealed no evidence of a retear but showed slight fluid around the biceps tendon.[24]  Marshall received a subacromial injection providing posterior to superior shoulder pain relief, but she continued to have anterior pain.[25]  A physical examination revealed soreness in the bicipital groove and positive Speed's and O'Brien's tests.[26]

---

[20] Tr. 898.

[21] Tr. 899.

[22] *Id.*

[23] Tr. 1092.

[24] Tr. 438-39.

[25] *Id.*

[26] *Id.*

It was recommended that Marshall receive an ultrasound-guided bicipital groove injection.[27]

In August of 2022, Marshall underwent a left hand ring finger flexor tendon sheath sharp excisional irrigation and debridement for flexor tenosynovitis after sustaining a dog bite.[28] Marhsall's surgeon, Dr. Michael Corum, noted she was progressing well and as expected after the procedure.[29] An occupational therapy ("OT") evaluation around this time revealed Marshall had expected injury and operative stiffness, weakness, and coordination of the left hand with an overall moderate level of functional impairment.[30] Marshall attended OT sessions for two months but continued to experience pain, stiffness, and decreased grip strength.[31] On October 26, 2022, Marshall was discharged from OT due to a plateau in progress.[32]

---

[27] *Id.*
[28] Tr. 374.
[29] Tr. 377.
[30] Tr. 385.
[31] Tr. 390, 395, 465, 468, 471, 475, 477, 487, 489, 491, 493, 495-96, 499-500.
[32] Tr. 499.

In November of 2022, an MRI of Marshall's hand depicted mild fluid along the ring finger proximal interphalangeal ("PIP") joint indicating potential reactive edema injury.[33]  A left ring finger PIP joint contracture release was arranged,[34] but she continued to report numbness and pain following the procedure.[35]  This same month, Marshall presented to Dr. Deitch for a reevaluation of her left shoulder due to continued discomfort.[36] Dr. Deitch noted Marshall had full range of motion and strength despite her complaints and cleared her to return to work without any restrictions from a shoulder standpoint.[37]

In June of 2023, Marshall received a carpel tunnel injection given her lack of improvement, which helped the range of motion and discomfort in her left ring finger.[38]  In August of 2023, Marshall was diagnosed with carpal tunnel syndrome, chronic hand pain, stiffness of finger joint, and dog bite of the left hand including fingers with

---

[33] Tr. 1001.
[34] *Id.*
[35] Tr. 622, 893.
[36] Tr. 546.
[37] *Id.*
[38] Tr. 1955.

infection.[39]  It was recommended that Marshall undergo a left endoscopic carpal tunnel release, which occurred on August 18, 2023.[40]  Post-operative treatment notes indicate Marshall was "nearly tip to palm with all digits."[41]  She reported improvement aside from some residual dysesthesias in the fingers in the median nerve distribution.[42]

In September of 2023, Marshall appeared for a follow-up visit with Dr. Bernal regarding her chronic lower back pain.[43]  Dr. Bernal noted that Marshall was non-compliant with taking her vitamin D supplements, attending myofascial massage sessions, or utilizing a TENS unit.[44]  In November of 2023, Marshall sustained a fall that caused pain along her palm into her volar wrist and ulnocarpal joint.[45]  X-rays of the left wrist and a physical exam revealed degenerative changes of her thumb carpometacarpal ("CMC") joint and tenderness over the

---

[39] Tr. 1958.
[40] Tr. 1958-59.
[41] Tr. 1878, 1911.
[42] Tr. 1878.
[43] Tr. 1902.
[44] *Id.*
[45] Tr. 1837-38.

ulnocarpal joint in the area of the ulnar styloid.[46]  CMC joint steroid injections were administered, which provided no relief.[47]  An MRI was ordered due to Marshall's lack of improvement despite activity modification, therapeutic exercises, and wrist immobilization and supportive wrapping.[48]  MRI imaging revealed right wrist/radial sided proximal hand osteoarthrosis, chronic tearing of the triangular fibrocartilage complex, and mild extensor carpi ulnaris tendinosis.[49]

It is against the backdrop of this record that an ALJ held a hearing on Marshall's disability application on April 15, 2024.[50]  Marshall and a Vocational Expert both appeared and testified at this hearing.[51]  Following this hearing, on May 16, 2024, the ALJ issued a decision denying Marshall's application for disability benefits.[52]  The ALJ first concluded that Marshall had not engaged in substantial gainful activity

---

[46] Tr. 1841.
[47] Tr. 1709-10, 1837, 1842.
[48] Tr. 1713.
[49] Tr. 1226.
[50] Tr. 41-55.
[51] *Id.*
[52] Tr. 22-33.

since her alleged onset date of February 10, 2022.[53]   At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Marshall suffered from severe impairments of major depressive disorder, PTSD, and personality disorder.[54]   The ALJ further concluded that while Marshall suffered from several other physical impairments, including a dog bite to the left hand, tenosynovitis of the left ring finger, CMC joint arthritis of the thumbs, left rotator cuff tear, osteoarthritis of the left wrist, obesity, osteoarthritis of the knees, degenerative disc disease of the lumbar spine and cervical spine, left carpal tunnel syndrome, vitamin D deficiency, a back lipoma, gastroesophageal reflux disease, diabetes mellitus, and obstructive sleep apnea, these impairments were non-severe.[55]   At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[56]   Specifically, the ALJ found that Marshall

---

[53] Tr. 24.
[54] Tr. 24-26.
[55] *Id.*
[56] Tr. 26-28.

experienced, at most, mild to moderate limitations in the four broad areas of mental functioning.[57]

Between Steps 3 and 4, the ALJ then concluded that Marshall:

[H]a[d] the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Work that is limited to simple and routine tasks, involving only simple, work-related decisions, and with few, if any, workplace changes, and only occasional interaction with supervisors and coworkers.[58]

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Marshall's reported symptoms.  With respect to the medical opinion evidence, the ALJ considered the opinions of the state agency psychological consultants, Drs. John Gavazzi and Paul Terren, who found that Marshall had a mild limitation pertaining to understanding, remembering, or applying information and a moderate limitation pertaining to interacting with others, concentration, persistence, or maintaining pace, and adapting or managing oneself.[59]  The ALJ found

---

[57] *Id.*

[58] Tr. 28.

[59] Tr. 60-62, 68-71.

11

these opinions persuasive given their consistency with the longitudinal record.[60]

The ALJ also considered the opinion of the state agency medical consultant, Dr. Carl Ritner, who concluded Marshall does not have a severe physical impairment.[61]  The ALJ found this opinion persuasive as it is consistent with the evidence of record, including "clinical examination findings of normal coordination, no abnormal muscle tone, and normal reflexes; the claimant's lack of persistent treatment for symptoms related to all of her physical impairments; and the claimant's own report that she has no problems dressing, bathing, caring for her hair, feeding herself, and using the toilet, she does dishes, floors, and dusts, and she drives."[62]

Lastly, the ALJ considered the opinions of Dr. Corum and Jacob Sterner, PT, and found them to be unpersuasive.[63]  Dr. Corum found that Marshall could not lift, push, or pull greater than one pound with the left

---

[60] Tr. 30.
[61] Tr. 58-59.
[62] Tr. 31.
[63] *Id.*

upper extremity and could not perform repetitive activity.[64]  The ALJ explained that Dr. Corum's opinion was not consistent with all of the evidence of record, which included findings of normal coordination and reflexes, an ability to nearly form a full fist, and an admitted capability of performing daily activities such as bathing, dressing, feeding herself, toileting, caring for her hair, and cleaning.[65]  The ALJ further noted that Dr. Corum recognized Marshall's negative EMG results.[66]

Mr. Sterner limited Marshall to a sedentary exertional level.[67]  The ALJ found this opinion was not consistent with the longitudinal record.[68]  Specifically, the ALJ noted the lack of persistent abnormal findings of Marshall's lumbar spine, cervical spine, and lower extremities.[69]  The ALJ further recognized normal findings pertaining to Marshall's reflexes, coordination, and her self-reports of her ability to perform daily activities.[70]

---

[64] Tr. 959, 962, 1955.
[65] Tr. 31.
[66] *Id.*
[67] Tr. 2080-86.
[68] Tr. 31.
[69] *Id.*
[70] *Id.*

With respect to Marshall's physical symptoms, the ALJ found that Marshall's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence.[71] Marshall testified that she stopped working in February of 2022 due to surgery on her left shoulder.[72] Marshall also underwent surgery on her left hand ring finger and left hand carpal tunnel.[73] She reported lack of movement in her left ring finger and that she experiences pain in her right hand and shoulder, knees, feet, lower back, neck, and lower abdomen.[74] As to her physical capabilities, Marshall testified that she can only stand comfortably for about 15 to 20 minutes without difficulty, has a lifting/carrying capacity of five pounds in her left hand and ten pounds in her right hand, and has difficulty typing.[75] While Marshall reported difficulty performing household tasks, she indicated that she can do the dishes and take care of her chickens.[76]

---

[71] Tr. 29-31
[72] Tr. 42.
[73] Tr. 45.
[74] Tr. 45-46.
[75] Tr. 46-47.
[76] Tr. 48.

14

The ALJ ultimately found Marshall's testimony to be inconsistent with the objective clinical findings.[77]  The ALJ recounted the objective evidence during the alleged disability period, including unremarkable MRI imaging of the left hand and examination findings of normal coordination, no abnormal muscle tone, normal reflexes, and an ability to actively extend and flex all digits in the left hand with near full flexion of the left ring finger.[78]  The ALJ also noted evidence that Marshall went hunting in October of 2022 and reported she has no problems performing daily activities in January of 2023.[79]  Moreover, the ALJ recognized that medical records failed to demonstrate Marshall persistently reported symptoms that were attributed to her physical impairments by an acceptable medical source.[80]  Ultimately, the ALJ concluded that Marshall was not as limited as she alleged.

Having made these findings, the ALJ found at Step 4 that Marshall is unable to perform past relevant work but found at Step 5 that she could

---

[77] Tr. 24-26, 29-31.
[78] Tr. 25.
[79] *Id.*
[80] Tr. 25-26.

perform the occupations of a laundry sorter, marker, and mailer sorter.[81]
Accordingly, the ALJ found that Marshall had not met the stringent
standard prescribed for disability benefits and denied her claim.[82]

This appeal followed.  On appeal, Marshall argues that the ALJ's
decision is not supported by substantial evidence.[83]  This case is fully
briefed and is therefore ripe for resolution.  For the reasons set forth
below, we will affirm the decision of the Commissioner.

## III.   Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits
is limited to the question of whether the findings of the final decision-
maker are supported by substantial evidence in the record.[84]  Substantial
evidence "does not mean a large or considerable amount of evidence, but
rather such relevant evidence as a reasonable mind might accept as

---

[81] Tr. 31-32.

[82] Tr. 33.

[83] *See* Doc. 13.

[84] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198,
200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa.
2012).

adequate to support a conclusion."[85]    Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[86]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[87]    However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[88]    The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[89]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to

---

[85] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[86] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[87] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[88] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[89] *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

support a conclusion.'"[90]  Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[91]  Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[92]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[93]  Thus, we cannot re-weigh the evidence. Instead, we must determine whether

---

[90] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[91] *Id.*

[92] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[93] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

there is substantial evidence to support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[94]  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[95]  Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[96]

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less

---

[94] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[95] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[96] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

than 12 months."[97]  This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[98]  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[99]

In making this determination, the ALJ follows a five-step evaluation.[100]  The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[101]

---

[97] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).
[98]  42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[99] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[100] 20 C.F.R. §§404.1520(a), 416.920(a).
[101]20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[102] In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[103] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[104]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[105] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform

---

[102] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[103] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[104] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[105] *Mason*, 994 F.2d at 1064.

consistent with the claimant's RFC, age, education, and work experience.[106]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[107] Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[108]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically

---

[106] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

[107] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

[108] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[109] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[110]    Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[111]

**C. <u>Step 2 Analysis</u>**

At Step 2, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments.[112]  An impairment is considered severe if it "significantly limits an individual's physical or

---

[109] *Biller*, 962 F. Supp. 2d at 778–79.

[110] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.

[111] *Burns,* 312 F.3d 113.

[112] *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987).

mental abilities to do basic work activities,"[113] or if it is "something beyond 'a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'"[114]  This Step 2 inquiry is a de minimis screening device used to cast out meritless claims.[115]  The claimant bears the burden to show that an impairment should be considered severe.[116]

## D. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[117]  Supportability and consistency are the two most important factors, and an ALJ must explain how these factors

---

[113] 20 C.F.R. 404.1520(c),

[114] *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citations omitted).

[115] *Id.*; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

[116] *Bowen*, 482 U.S. at 146; *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020)

[117] 20 C.F.R. § 404.1520c(c).

were considered in his or her written decision.[118]  Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[119]  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[120]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[121]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[122]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based

---

[118] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

[119] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[120] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[121] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

[122] *Mason*, 994 F.2d at 1066.

on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[123]   On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[124]

### E. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations.[125]   Our review of those determinations is deferential.[126] However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible."[127]   An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence."[128]   As the

---

[123] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

[124] *Cummings*, 129 F. Supp. 3d at 214–15.

[125] *See Diaz,* 577 F.3d at 506.

[126] *Id.*

[127] *Zirnsak*, 777 F.3d at 612 (citations omitted).

[128] *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).

Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them."[129]

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms.[130] Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record.[131]

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.[132] During the second step of this assessment, the ALJ must

---

[129] *Chandler,* 667 F.3d at 363 (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

[130] 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p.

[131] SSR 16-3p.

[132] 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p.

determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated considering the entire case record.[133] This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[134]

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings.[135] Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms.[136] These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms;

---

[133] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.
[134] *Id.*
[135] SSR 16-3p.
[136] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations.[137]

## F. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential.  Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[138]  Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Marshall generally argues the ALJ erred in finding that she does not have a severe physical impairment that limits her ability to work.[139] To the extent that Marshall's argument is made by pointing to record evidence that she contends supports abnormal physical findings, such

---

[137] *Id.*
[138] *Biestek*, 139 S. Ct. at 1154.
[139] Doc. 13 at 3, 24-31; Doc. 18.

argument is unavailing.[140]   It is well settled that courts reviewing an ALJ's decision "must not substitute our own judgment for that of the fact finder."[141]   Indeed, we are not permitted at this stage to reweigh the evidence.[142]

In any event, we find the ALJ adequately explained why he found Marshall's physical impairments to be non-severe.  The ALJ discussed the following physical impairments at Step 2 and found them to be non-severe:  a dog bite to the left hand, tenosynovitis of the left ring finger, CMC joint arthritis of the thumbs, left rotator cuff tear, osteoarthritis of the left wrist, obesity, osteoarthritis of the knees, degenerative disc disease of the lumbar spine and cervical spine, left carpal tunnel syndrome, vitamin D deficiency, a back lipoma, gastroesophageal reflux disease, diabetes mellitus, and obstructive sleep apnea.   The ALJ

---

[140] Doc. 13 at 27 n. 18.

[141] *Zirnsak*, 777 F.3d at 611 (citing *Rutherford*, 399 F.3d at 552); *see also Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) ("Neither the district court nor this court is empowered to weigh the evidence or substitute [our] conclusions for those of the fact-finder.") (citing *Early v. Heackler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

[142] *Chandler*, 667 F.3d at 359.

thoroughly detailed the medical record and Marshall's testimony regarding her physical impairments.

As to Marshall's dog bite of the left hand and tenosynovitis of the left ring finger, the ALJ noted her reports of pain and numbness, disfigurement, lack of movement in her left finger, and five-pound lift limitation with her left hand.[143] However, the ALJ further noted that Marshall went hunting a few months after surgery, was able to flex all digits of the left hand with near full flexion of the left ring finger, the MRI imaging showed intact flexor and extensor tendons, her January 2023 function report indicated she has no problem performing daily activities, treatment records indicated the surgical incision healed, and clinical examination findings of normal coordination, no abnormal muscle tone, and normal reflexes.[144]

The ALJ next assessed Marshall's CMC joint arthritis of the thumbs, left rotator cuff tear, osteoarthritis of the left wrist, obesity, osteoarthritis of the knees, degenerative disc disease of the lumbar spine

---

[143] Tr. 24-25.
[144] Tr. 25.

and cervical spine, and left carpal tunnel syndrome. The ALJ recognized Marshall's claims of widespread pain, her ability to only be on her feet for 15 to 20 minutes, and her ten-pound lift limitation with her right hand.[145] Despite these abnormal allegations, the ALJ further noted that the medical records do not indicate Marshall persistently reported experiencing symptoms or was persistently assessed with abnormal clinical examination findings that were attributed to these impairments by an acceptable medical source.[146] Indeed, the ALJ again recognized Marshall's reported ability to perform a wide range of daily activities. The ALJ made the same findings as to Marshall's vitamin D deficiency, back lipoma, gastroesophageal reflux disease, diabetes mellitus, and obstructive sleep apnea, and further recognized her failure to allege ongoing symptoms during her testimony.[147]

Ultimately, the ALJ found that Marshall's physical impairments were non-severe. Given that it is the claimant's burden to prove that an impairment is severe at Step 2, we conclude that the ALJ's Step 2

---

[145] Tr. 25-26.

[146] *Id.*

[147] Tr. 26.

decision is supported by substantial evidence and does not require a remand.

Marshall also challenges the ALJ's treatment of medical opinion evidence. She argues the ALJ erred in failing to acknowledge that a significant amount of evidence came into the record after the state agency consultants' review while finding their opinions persuasive.[148] "The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."[149] It is "[o]nly where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required."[150] Nevertheless, "where evidence can be read to indicate that a plaintiff's condition deteriorated after the state agency reviewer issued his opinion, . . . the

---

[148] Doc. 13 at 29.
[149] *Chandler*, 667 F.3d at 361.
[150] *Id.* (quoting SSR 96–6p (July 2, 1996) (emphasis added)).

ALJ's reliance on that opinion [may be] troubling."[151]   Ultimately, an "ALJ's reliance on the opinion of a reviewing consultant who did not have all relevant records requires thorough explanation."[152]

In support of this argument, Marshall merely points to nearly 1,000 pages of the record that contain medical evidence dated both before and after the state agency review.  However, this observation alone, without more, is insufficient to demonstrate a deterioration in a claimant's condition.[153]   Accordingly, we conclude this argument is without merit and find no basis for remand.

Marshall further argues that the ALJ failed to consider that the opinions of Dr. Corum and Mr. Sterner were consistent with each

---

[151] *Batdorf v. Colvin*, 206 F. Supp. 3d 1012, 1024 (M.D. Pa. 2016) (internal quotations omitted); *see also Garcia v. Dudek*, No. 1:24-CV-00194, 2025 WL 674226, at *9 (M.D. Pa. Mar. 3, 2025) (collecting cases).
[152] *Batdorf*, 206 F. Supp. 3d at 1024–25; *see also Burton v. Kijakazi*, No. 20-196, 2022 WL 125368, at *2 (W.D. Pa. Jan. 13, 2022) ("The ALJ . . . clearly considered the record postdating the consultant's opinion . . . and adequately explained his reasons for accepting or rejecting pertinent parts of the record.").
[153] *See Gambriel v. Kijakazi*, No. 1:20-CV-01393, 2022 WL 808496, at *7 (M.D. Pa. Mar. 16, 2022); *Caiazzo v. Saul*, No. 3:19-CV-02008, 2021 WL 7967588, at *2 (M.D. Pa. Apr. 28, 2021).

other.[154]  Her argument is grounded on the premise that some evidence

in the record supports the limitations set forth by each opinion.  But as

explained above, we may not reweigh the evidence.  Contrary to

Marshall's argument, the ALJ was not required to specify whether the

opinions were consistent with each other.[155]  The ALJ found Dr. Corum's

opinion unpersuasive, reasoning that the opinion was not supported by

his own examination findings, nor was it consistent with the objective

medical evidence or Marshall's own self-report.[156]  Similarly, the ALJ

found Mr. Sterner's opinion unpersuasive, concluding it was not

consistent with the objective medical examination findings pertaining to

Marshall's lumbar spine, cervical spine, lower extremities, reflexes,

coordination, and activities of daily living.[157]  Ultimately, the ALJ was

confronted with several medical opinions that set forth varying

restrictions regarding Marshall's ability to perform work.  The ALJ

adequately explained why he found the opinions not persuasive.

---

[154] Doc. 13 at 29-31.

[155] *Christine F. B. v. Bisignano*, No. CV 24-5210, 2025 WL 1830603, at *6 (E.D. Pa. June 30, 2025).

[156] Tr. 31.

[157] *Id.*

35

Accordingly, we conclude that the ALJ's treatment of the medical opinions is supported by substantial evidence.

We reach a similar conclusion with respect to the consideration of Marshall's subjective symptoms. As detailed above, the ALJ discussed the objective medical evidence pertaining to Marshall's physical impairments, as well as her testimony concerning the same. However, the ALJ concluded that Marshall's allegations of her symptoms were not consistent with the evidence in the record. Thus, while Marshall challenges the ALJ's credibility determination, we are not permitted at this stage to reweigh the evidence, and instead must simply determine whether the ALJ's decision was supported by "substantial evidence."[158] Here, we conclude that the ALJ's consideration of Marshall's subjective symptoms is supported by substantial evidence.

Therefore, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that

---

[158] *Chandler*, 667 F.3d at 359; *Biestek*, 139 S. Ct. at 1154.

substantial evidence supported the ALJ's evaluation of this case, and this decision will be affirmed.

## IV.    <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 23rd day of February 2026.

*<u>s/ Daryl F. Bloom</u>*
Daryl F. Bloom
Chief United States Magistrate Judge